**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| LAURA GARNER and LAWRENCE ADAMS, individually and as representatives of a class of similarly situated persons, on behalf of the NORTHROP GRUMMAN SAVINGS PLAN,<br><br>Plaintiffs,<br>v.<br><br>NORTHROP GRUMMAN CORPORATION, the NORTHROP GRUMMAN BENEFIT PLAN ADMINISTRATIVE COMMITTEE, and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>Defendants. | Case No:<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## I.    INTRODUCTION

1.      Plaintiffs, Laura Garner and Lawrence Adams ("Plaintiffs"), individually in their capacities as participants of the Northrop Grumman Savings Plan ("Plan") and as representatives of a proposed class ("Class," further defined below) of participants and beneficiaries in the Plan, bring this action ("Action") under 29 U.S.C. § 1132, on behalf of the Plan and the Class against Defendants, Northrop Grumman Corporation ("Northrop Grumman"), the Northrop Grumman Benefit Plan Administrative Committee ("Committee"), and Does No. 1-20, who are members of the Committee or other fiduciaries of the Plan and whose names are currently unknown (collectively, "Defendants"), for (1) breach of the fiduciary duties established under the Employee Retirement Income Security Act ("ERISA"), (2) violation of ERISA's anti-inurement provision, and (3) engaging in self-dealing and transactions prohibited by ERISA, beginning six years from the date this action is filed and continuing to the date of judgment (the "Class Period").

2.      This action arises out of Defendants' wrongful use, for their own benefit, of assets in their employees' retirement plan.  As set forth herein, Defendants used forfeited Plan assets to reduce Northrop Grumman's employer contribution obligations rather than for the benefit of Plan participants, in violation of their fiduciary responsibilities and several provisions of ERISA. In this action, Plaintiffs seek damages and other appropriate relief in connection with Defendants' wrongful conduct in misusing forfeited Plan assets for their own benefit.

3.      Defendants are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) with specific duties and obligations imposed by ERISA.  During the Class Period, Defendants breached the duties they owed to the Plan by using funds forfeited by Plan participants to reduce employer contributions to the Plan instead of using such funds to reduce or eliminate the amounts charged to Plan participants for administrative expenses.  In doing so, Defendants failed to "defray[] reasonable expenses of administering the [P]lan," 29 U.S.C. § 1104(a)(A)(ii), allowed the Plan's assets to "inure to the benefit of" Northrop Grumman, 29 U.S.C. § 1103(c)(1), and otherwise acted imprudently and disloyally.  *See* 29 U.S.C. § 1104.  This repeated choice elevated the interests of Northrop Grumman over those of Plan participants and was contrary to the conduct of a reasonable fiduciary under like circumstances.  This misconduct alleged herein clearly breached the fiduciary duties Defendants owed to participants and beneficiaries and violated several provisions of ERISA, costing the Plan and its participants millions of dollars.

4.      Based on this conduct, Plaintiffs assert claims against Defendants for breach of the fiduciary duty of prudence (Count I), breach of the fiduciary duty of loyalty (Count II), breach of ERISA's anti-inurement provision (Count III), and failure to monitor co-fiduciaries (Count IV).

## THE PARTIES

5.     Plaintiffs are former employees of Northrop Grumman and participants in the Plan under 29 U.S.C. § 1002(7).  Plaintiff Garner is a resident of Benson, Arizona, and Plaintiff Adams is a resident of Sulphur, Louisiana.

6.     Northrop Grumman is a multinational aerospace and defense corporation headquartered in West Falls Church, Virginia.  With annual revenue in excess of $39 billion, Northrop Grumman is one of the largest weapons manufacturers and military technology providers in the world.[1]

7.     The Committee is the Plan Administrator and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102.  The Committee maintains its address at Northrop Grumman's corporate headquarters in West Falls Church, Virginia.  The Committee and its members are appointed by Northrop Grumman to administer the Plan on Northrop Grumman's behalf.

8.     Does No. 1-10 are the members of the Committee and, by virtue of their membership, as well as by their maintenance and exercise of control over Plan assets, fiduciaries of the Plan.  Despite reasonable and diligent efforts, Plaintiffs are currently unable to determine the membership of the Committee or the identity of the other fiduciaries of the Plan, as this information is not publicly available.  As such, these Defendants are named Does 1-10 as placeholders.  Plaintiffs will move, pursuant to Federal Rule of Civil Procedure 15, to amend this Complaint to name the members of the Committee and other responsible individuals as defendants as soon as their identities are discovered.

---

[1] *Top 100 for 2024*, DEFENSENEWS, https://people.defensenews.com/top-100/ (last visited Mar. 7, 2025).

## JURISDICTION AND VENUE

9.      Plaintiffs seek relief on behalf of the Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

11.     Venue is proper in this District pursuant to 29 U.S.C. § 1332(e) and 28 U.S.C. § 1391 because Northrop Grumman's principal place of business is in this District and the Plan is administered from this District.  Furthermore, a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this District.

12.     Plaintiffs have standing to bring this action.  ERISA authorizes any participant, fiduciary, or the Secretary of Labor to bring suit as a representative of a plan, with any recovery necessarily flowing to a plan.  *See* 29 U.S.C. § 1132(a)(2).  As explained herein, the Plan has suffered millions of dollars in losses resulting from Defendants' fiduciary breaches and other violations of ERISA and remains vulnerable to continuing harm, all redressable by this Court.  In addition, although these Plan-wide injuries establish standing under 29 U.S.C. § 1132(a)(2), Plaintiffs and all Plan participants suffered injury from Defendants' failure to use forfeited Plan funds to pay Plan administrative expenses, which would have reduced or eliminated the amounts charged to Plan participants' individual accounts.

13.     Plaintiffs are entitled to the difference between the value of their accounts as of the time the accounts were distributed and what the accounts were or would have been worth, but for Defendants' breaches of fiduciary duties as described herein.

14.     Plaintiffs did not have knowledge of all material facts necessary to understand

that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

## **FACTUAL ALLEGATIONS**

15.     The Plan is a defined contribution retirement Plan sponsored by Northrop Grumman.  Eligible employees of Northrop Grumman make tax-deferred contributions to the Plan.  As of December 31, 2023, the Plan had 154,894 participants with account balances and assets totaling approximately $36.2 billion, making it one of the largest defined contribution plans in the country.[2]

16.     Northrop Grumman delegates day-to-day responsibility for the Plan's management and administration to the Committee.  The Committee's responsibilities for managing and administering the Plan are carried out by its members.  Under this structure, Defendants each maintain discretion and control over the Plan and its assets and, consequently, they are fiduciaries of the Plan under ERISA.  As fiduciaries of the Plan, Defendants are obligated to act for the exclusive benefit of participants and ensure that Plan expenses are fair and reasonable.

17.     The Plan obtains various administrative services from third-party vendors. Although Northrop Grumman could elect to pay for these administrative services in its capacity as Plan sponsor, Plan participants pay for the Plan's administrative expenses through a direct charge to their Plan accounts.  The deduction of the cost of these administrative expenses from participant accounts reduces the funds ultimately available to participants for investment or distribution.

---

[2]*The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2021*, INVESTMENT COMPANY INSTITUTE & BRIGHTSCOPE, at 7 (Aug. 2024).

18.     Under the terms of the Plan, participants are immediately vested in their own contributions to the Plan.  However, participants only become fully vested in the contributions made by Northrop Grumman upon the completion of a certain number of years of service to Northrop Grumman.

19.     When a participant is terminated or has a break in service prior to becoming fully vested in Northrop Grumman's contributions, the participant forfeits the balance of Northrop Grumman's unvested contributions in his or her account.  Defendants exercise discretionary authority and control over how these Plan assets are thereafter reallocated.

20.     Upon information and belief, the Plan's governing document states that forfeitures due to the termination of nonvested participants ("Forfeitures") will be used first to restore previously forfeited accounts of former participants or to pay the Plan's administrative expenses, and *then* to offset future employer contributions to the Plan.  Thus, under the terms of the Plan, Defendants are not permitted to offset future contributions to the Plan before using Forfeitures to pay the Plan's administrative expenses.

21.     The Plan Document further allows excess Forfeitures carried forward from previous years to be used for the same purposes.  When deciding how to allocate such carryover Forfeitures in their discretion as Plan fiduciaries, Defendants were obligated to act in the best interests of the Plan's participants and beneficiaries.  Using Forfeitures to reduce employer contributions is always in the best interest of Northrop Grumman because doing so decreases Northrop Grumman's own contribution costs.[3]  Using Forfeitures to pay Plan expenses, however, is the option in the best interest of participants because it reduces or eliminates

---

[3]This use of Forfeitures only serves the interests of Plan participants if there is a risk that Northrop Grumman will be financially unable to satisfy its contribution obligations, which was never the case during the Class Period.

amounts otherwise changed to participants to cover Plan expenses.

22.    In deciding between using Forfeitures to benefit Northrop Grumman or to benefit Plan participants, Defendants are presented with a conflict of interest. Although the Plan provides that Defendants are to use the Forfeitures to pay Plan administrative expenses—thereby reducing or eliminating the amounts charged to individual participant accounts to cover such expenses—*before* using Forfeitures to offset Northrop Grumman's contributions to the Plan, Defendants have consistently declined to follow this provision. Yet even apart from the Plan's terms, it is clear that Defendants did not undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries.

23.    Instead, Defendants have consistently chosen to prioritize using Forfeitures solely to reduce Northrop Grumman's contribution obligations to the Plan, a decision for Northrop Grumman's own benefit and to the detriment of the Plan and its participants.

24.    Form 5500 is the Department of Labor form on which the sponsor or administrator of an employee benefit plan governed by ERISA reports information concerning the qualification, financial condition, investments, and operations of the plan.

25.    The Plan's 2018 Form 5500 indicates that forfeited nonvested accounts totaled $11.3 million and $7.3 million as of December 31, 2018, and December 31, 2017, respectively. Defendants used these Forfeitures to reduce employer matching contributions by $11 million in 2018. No Forfeitures were used to offset Plan expenses during 2018.

26.    The Plan's 2019 Form 5500 indicates that forfeited nonvested accounts totaled $12.6 million as of December 31, 2019. Defendants used the entirety of these Forfeitures to reduce employer matching contributions by $12.6 million in 2019. No Forfeitures were used to offset Plan expenses during 2019.

27.     The Plan's 2020 Form 5500 indicates that forfeited nonvested accounts totaled $13 million as of December 31, 2020.  Defendants used the entirety of these Forfeitures to reduce employer matching contributions by $13 million in 2020.  No Forfeitures were used to offset Plan expenses during 2020.

28.     The Plan's 2021 Form 5500 indicates that forfeited nonvested accounts totaled $20.5 million as of December 31, 2021.  Defendants used the entirety of these Forfeitures to reduce employer contributions by $20.5 million in 2021.  No Forfeitures were used to offset Plan expenses during 2021.

29.     The Plan's 2022 Form 5500 indicates that forfeited nonvested accounts totaled $18.9 million as of December 31, 2022.  Defendants used the entirety of these Forfeitures to reduce employer contributions by $18.9 million in 2022.  No Forfeitures were used to offset Plan expenses during 2022.

30.     The Plan's 2023 Form 5500 indicates that nonvested accounts totaled $5.8 million as of December 31, 2023.  Defendants used the entirety of these Forfeitures, as well as Forfeitures carried over from previous years, to reduce employer contributions by $16.5 million in 2023.  No Forfeitures were used to offset Plan expenses during 2023.

31.     While Defendants' use of the Forfeitures in the Plan's trust fund to reduce employer contributions benefited Northrop Grumman by reducing its own contribution obligations, it harmed the Plan and its participants and beneficiaries, as such contributions would otherwise have increased the amounts available to Plan participants for investment or distribution.  Indeed, although Northrop Grumman had sufficient cash and cash equivalents on hand to satisfy its contribution obligations to the Plan in every year of the Class Period, Defendants consistently based their decision on how to allocate Forfeitures solely on Northrop

Grumman's self-interest.

32.    Moreover, by using Forfeitures solely to decrease Northrop Grumman's contributions instead of reducing Plan expenses, Defendants caused participants to incur deductions from their individual accounts each quarter to cover expenses that would otherwise have been paid in whole or in part by Forfeitures.

33.    A prudent fiduciary would have investigated which Forfeiture reallocation option was in the best interest of the Plan's participants and beneficiaries or consulted with an independent non-conflicted decisionmaker to advise on the best course of action.  Defendants, however, did not take any such action.

## ERISA'S FIDUCIARY STANDARDS

34.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.  29 U.S.C. § 1104(a), states, in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A)      for the exclusive purpose of
>
> > (i.)    providing benefits to participants and their beneficiaries; and
> >
> > (ii.)   defraying reasonable expenses of administering the plan;
> >
> > > [and]
>
> (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

35.    Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in a plan and their beneficiaries and defraying

reasonable expenses of administering the plan.

36.    Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in a plan.

37.    ERISA's fiduciary duties are "the highest known to the law," *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014), and must be performed "with an eye single to the interests of the participants and beneficiaries." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 419 (4th Cir. 2007).

38.    ERISA also imposes liability on plan fiduciaries for certain actions committed by their co-fiduciaries.  29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2)    if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

39.    29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109, which provides, in

relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## CLASS ACTION ALLEGATIONS

40.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class ("Class"):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan at any time between six years from the date this action is filed and the date of judgment (the "Class Period"). Excluded from the Class are Defendants and the Judge to whom this case is assigned or any other judicial officer having responsibility for this case who is a beneficiary.

41.    This action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

42.    **Numerosity**.  According to the Plan's Forms 5500, there are at least thousands of Class members throughout the United States.  As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

43.    **Commonality**.  There are numerous questions of fact and/or law that are common to Plaintiffs and all the members of the Class, including, but not limited to the following:

(a)    Whether Defendants' decision to use Forfeitures to reduce Northrop Grumman's contribution obligations instead of pay Plan expenses was a breach of ERISA's fiduciary duties of prudence and loyalty;

(b)    Whether Defendant's decision to use Forfeitures to reduce Northrop Grumman's contribution obligations instead of pay Plan expenses was a breach of ERISA's anti-

inurement provision;

(c)     Whether the Plan suffered losses as a result of Defendants' decision to use Forfeitures to reduce Northrop Grumman's contribution obligations instead of pay Plan expenses; and

(d)     Whether and what form of relief should be afforded to Plaintiffs and the Class.

44.     **Typicality**.  Plaintiffs, who are members of the Class, have claims that are typical of all members of the Class.  Plaintiffs' claims and the Class members' claims arise out of the same uniform course of conduct by Defendants and under the same legal theories.

45.     **Adequacy of Representation**.  Plaintiffs will fairly and adequately represent the interests of the Class.  Plaintiffs have no conflicts of interest with or interests that are any different from the other members of the Class.  Plaintiffs have retained competent counsel experienced in class actions and other complex litigation, including class actions brought under ERISA.

46.     **Potential Risks and Effects of Separate Actions**.  The prosecution of separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.  Individual class member adjudications would also be dispositive of the interests of the other Class members not parties to the individual adjudications, which would substantially impair or impede their ability to protect their interests.

47.     **Predominance**.  Common questions of law and fact predominate over questions affecting only individual Class members.  The Court and the parties will spend the vast majority of their time working to resolve these common issues.  Indeed, the only individual issues of significance will be the exact amount of damages each Class member will recover, the

calculation of which will ultimately be a ministerial function which does not bar Class certification.

48.    **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority, if not all, of the Class members are unaware of Defendants' breaches of fiduciary duty and prohibited transactions, such that they will never bring suit individually.  Furthermore, even if they were aware of the claims they have against Defendants, the individual claims of virtually all Class members would be too small to economically justify individual litigation.  Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the Court's and the parties' resources, and could lead to inconsistent results contrary to the interests of justice.

49.    **Manageability**.  This case is well-suited for treatment as a class action and can be easily managed as such since evidence of both liability and damages can be adduced and presented on a Class-wide basis, while the allocation and distribution of damages to Class members will be essentially a ministerial function.

50.    Defendants have acted in a manner generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty and other ERISA violations described above. Accordingly, injunctive relief, legal and equitable monetary relief, and declaratory relief are appropriate with respect to the Class as a whole.

51.    Plaintiffs' counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Federal Rule of Civil Procedure 23(g).  Moreover, treating this case as a class action is superior to proceeding on an individual basis, and there will be no difficulty in managing this case as a class action.

52.    Therefore, this action should be certified as a class action under Federal Rules of

Civil Procedure 23(a) and 23(b)(1) and/or 23(b)(3).

## COUNT I
### (Breach of Fiduciary Duties of Prudence)

53.  Plaintiffs reallege and incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

54.  At all relevant times, Defendants were designated fiduciaries under the Plan's governing documents and exercised discretionary authority or control over the administration and management of the Plan or the disposition of the Plan's assets.  Accordingly, Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), at all relevant times.

55.  As fiduciaries of the Plan, Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

56.  Defendants' conduct violates their fiduciary duties under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D).

57.  Pursuant to 29 U.S.C. § 1 104(a)(l)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Defendants breached their duty of prudence under 29 U.S.C. § 1 104(a)(l)(B) by using Forfeitures for their own benefit to reduce Northrop Grumman's contributions to the Plan, instead of for the benefit of Plan participants.  Defendants failed to engage in a reasoned and impartial decision-making process in determining to use Forfeitures in this manner.  Defendants failed to act in a prudent manner, in the best interest of the Plan's participants, and failed to consider whether participants would be better served by another use of these Plan assets after considering all

relevant factors.

58.    Defendants also failed to act in accordance with the documents and instruments governing the Plan.  Pursuant to 29 U.S.C. § 1104(a)(1)(D), Defendants were required to discharge duties solely in the interest of Plan participants and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent" with the provisions of ERISA.  Defendants breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(D) by using forfeited Plan assets in violation of the Plan's documents and requirements in Plan documents that the fiduciaries comply with ERISA.

59.    In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

60.    To the extent that any of the Defendants did not directly commit any of the foregoing breaches of fiduciary duty, each Defendant is liable under 29 U.S.C. § 1105(a) because he, she, or it was a co-fiduciary and knowingly participated in (or concealed) a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of specific responsibilities giving rise to his, her, or its fiduciary status, or knowingly failed to cure another fiduciary's breach of fiduciary duty or failed to take reasonable efforts to remedy that breach.

61.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan and its participants suffered millions of dollars of losses.  Had Defendants complied with their fiduciary obligations and used Forfeitures to pay Plan expenses, the Plan would not have suffered these losses and participants would have had more money available to them for retirement.

62.    Pursuant to ERISA §§ 409, 502 29 U.S.C. §§ 1109, 1132, Defendants are liable to

restore to the Plan the losses it suffered as a direct result of Defendants' breaches of fiduciary duty. Defendants are also liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs, and other recoverable litigation expenses.

## COUNT II
### (Breach of Fiduciary Duty of Loyalty)

63.     Plaintiffs reallege and incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

64.     At all relevant times, Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and management of the Plan or disposition of the Plan's assets.

65.     As fiduciaries of the Plan, Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

66.     Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

67.     Defendants failed to satisfy their duty of loyalty to the Plan and its participants when using Forfeitures for the benefit of Northrop Grumman instead of the sole interest of the Plan and its participants and beneficiaries.

68.     Defendants used these Plan assets for the purpose of reducing Northrop Grumman's contributions to the Plan, thereby reducing Northrop Grumman's obligations by millions of dollars each year at the expense of the Plan. As a result, Plan participants and beneficiaries were forced to incur avoidable expense charges to their individual accounts. This

improper use of Forfeitures placed Defendants' interests above those of the Plan and its participants and beneficiaries.

69.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses. Had Defendants complied with their fiduciary obligations and used Forfeitures to pay Plan expenses, the Plan would not have suffered these losses and participants would have had more money available to them for retirement.

70.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties. In addition, Plaintiffs are entitled to equitable and other appropriate relief from Defendants' breaches as set forth in their Prayer for Relief.

71.    To the extent that any Defendant did not directly commit any of the foregoing breaches of fiduciary duty, each Defendant is liable under 29 U.S.C. § 1105(a) because he, she, or it was a co-fiduciary and knowingly participated in (or concealed) a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of specific responsibilities giving rise to his, her, or its fiduciary status, or knowingly failed to cure another fiduciary's breach of fiduciary duty or failed to take reasonable efforts to remedy the breach.

## COUNT III
### (Breach of ERISA's Anti-Inurement Provision)

72.    Plaintiffs reallege and incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

73.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of

administering the plan."

74.    Because all Forfeitures are placed in the Plan's trust, these forfeited funds are Plan assets.

75.    Defendants' use of Forfeitures to defray Northrop Grumman's contributions to the saved Northrop Grumman millions of dollars that it would otherwise have to contribute to the Plan, thus causing the assets of the Plan to inure to the benefit of Northrop Grumman in violation of 29 U.S.C. § 1103(c)(1).

76.    To the extent that any Defendant did not directly commit any of the foregoing breaches of fiduciary duty, each Defendant is liable under 29 U.S.C. § 1105(a) because he, she, or it was a co-fiduciary and knowingly participated in (or concealed) a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of specific responsibilities giving rise to his, her, or its fiduciary status, or knowingly failed to cure another fiduciary's breach of fiduciary duty or failed to take reasonable efforts to remedy the breach.

77.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan and its participants suffered millions of dollars of losses.  Had Defendants complied with their fiduciary obligations and used Forfeitures to pay Plan expenses, the Plan would not have suffered these losses and participants would have had more money available to them for retirement.

78.    Pursuant to ERISA §§ 409, 502, 29 U.S.C. §§ 1109, 1132, Defendants are liable to restore to the Plan the losses it suffered as a direct result of Defendants' breaches of fiduciary duty.  Defendants are also liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs, and other

recoverable litigation expenses.

**COUNT IV**
**(Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)**

79.     Plaintiffs reallege and incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

80.     Northrop Grumman is responsible for appointing, overseeing, and removing members of the Committee.

81.     In light of its appointment and supervisory authority, Northrop Grumman had a fiduciary responsibility to monitor the performance of the Committee and its members.  In addition, Northrop Grumman and the Committee had a fiduciary responsibility to monitor the performance of the individual members of the Committee.

82.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, and must take prompt and effective action to protect the Plan and participants when they are not.

83.     To the extent that Northrop Grumman or the Committee delegated their fiduciary monitoring responsibilities, each Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

84.     Northrop Grumman and the Committee committed the following breaches of their fiduciary duty to monitor:

(a)     Failing to monitor and evaluate the performance of their appointees, allowing the Plan to suffer enormous losses as a result of the appointees' imprudent actions and omissions;

(b)     Failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein; and

- 19 -

(c)    Failing to remove appointees continuously engaged in conduct that benefited Northrop Grumman to the detriment of the Plan and its participants and beneficiaries.

85.    As a consequence of the foregoing breaches fiduciary duties, the Plan suffered millions of dollars of losses.  Had Defendants complied with their fiduciary obligations and otherwise monitored their co-fiduciaries, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for retirement.

86.    Pursuant to ERISA §§ 409, 502, 29 U.S.C. § 1109, 1132, Defendants are liable to restore to the Plan the losses it suffered as a direct result of Defendants' breaches of fiduciary duty.  Defendants are also liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs, and other recoverable litigation expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendants on all claims and request that the Court award the following relief:

A.    A determination that this action may proceed as a class action under Federal Rule of Civil Procedure 23(b)(1) or 23(b)(2);

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration that the Defendants, and each of them, have breached their fiduciary duties and other obligations under ERISA;

D.    An Order compelling Defendants to make good to the Plan all losses resulting from their breaches of fiduciary duties and other violations, and to restore to the Plan all profits Defendants made through use of the Plan's assets and which Plan participants would have made

had Defendants fulfilled their fiduciary obligations and other responsibilities to the Plan;

E.      An order requiring Defendants to disgorge all profits received from the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against Defendants as necessary to effectuate said relief and prevent Defendants' unjust enrichment;

F.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to individual account losses;

G.      An order enjoining Defendants from any further violations of their fiduciary responsibilities, obligations, and duties under ERISA;

H.      Other equitable relief as may be appropriate to redress Defendants' illegal practices and to enforce the provisions of ERISA, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of the Plan's fiduciaries deemed to have breached their fiduciary duties;

I.      An award of pre-judgment interest;

J.      An award of costs pursuant to 29 U.S.C. § 1132(g);

K.      An award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

L.      Such other and further relief as the Court deems equitable and just.

Dated: March 11, 2025                Respectfully submitted,

*/s/ Glenn E. Chappell*
Glenn E. Chappell (Bar No. 92153)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: gchappell@tzlegal.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
          lrubinow@millershah.com

James C. Shah
MILLER SHAH LLP
8730 Wilshire Boulevard, Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com

Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: ajberin@millershah.com

*Attorneys for Plaintiffs, the Plan,
and the Proposed Class*