IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LAURA GARNER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-00439 (AJT/WEF) |
| | ) |
| NORTHROP GRUMMAN CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In this ERISA action,[1] Plaintiffs,[2] individually and on behalf all others similarly situated, claim, *inter alia*, that Defendants Northrup Grumman Corporation ("Northrup Grumman" or the "Company"), the Northrop Grumman Benefit Plan Administrative Committee (the "Committee"), and John Does 1–10 (the "John Doe Defendants")[3] failed to follow the Plan document for the Company's defined contribution retirement plan, breached their fiduciary duties of loyalty and prudence, and engaged in prohibited transactions when they failed to apply forfeited Plan contributions to Plan expenses or employees' account restoration rather than fund their future

---

[1] On March 11, 2025, Plaintiffs Garner and Adams filed Case No. 1:25-cv-00439; and on May 2, 2025, Plaintiffs Clouse, Kawakami, Hoffelt, and Winkler brought related claims against the same defendants in Case No. 1:25-cv-00767. On June 5, 2025, both actions were consolidated under Case No. 1:25-cv-00439; and on June 18, 2025, a Consolidated Amended Complaint [Doc. No. 34] was filed.

[2] Plaintiffs Brian E. Clouse, Steven S. Kawakami, Douglas E. Hoffelt, Michael Winkler, Laura Garner, and Lawrence Adams are six former Northrup Grumman employees who remain active participants in the Plan; unnamed class members are defined as "[a]ll participants and beneficiaries of the Northrop Grumman Savings Plan from March 11, 2019, through the date of judgment (the "Class Period"), excluding, the Defendants, including but not limited to the officers and directors of Northrop Grumman Corporation from March 4, 2019 through the date of judgment and the individual members of the Northrop Grumman Benefit Plan Administrative Committee from March 4, 2019 through the date of judgment." [Doc. No. 34] ¶ 95. Plaintiffs allege that the class includes over 100,000 members. *Id.* ¶ 96.a.

[3] Plaintiffs allege that the Doe Defendants were Committee Members "who exercised discretionary authority or discretionary control over the administration and management of the Plan, exercised authority or control over the administration, management or disposition of Plan assets, or had discretionary authority or discretionary responsibility in the administration of the Plan and, accordingly, were fiduciaries to the Plan." [Doc. No. 34] ¶ 20.

1

employer Plan contribution obligations, all in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* [Doc. No. 34].

On July 18, 2025, Defendants filed a Motion to Dismiss Plaintiffs' Consolidated Class Action Claims [Doc. No. 37] (the "Motion"). The Court held a hearing on the Motion on September 19, 2025, following which it took the Motion under advisement. Upon consideration of the Motion and the parties' supplemental briefing, the argument of counsel at the hearing, and for the reasons stated below, the Motion is **GRANTED** and Counts I-VII of the Amended Complaint are **DISMISSED**.

## I. BACKGROUND

Plaintiffs allege the following facts in their Consolidated Class Action Complaint (the "Complaint"):

Northrup Grumman offered its employees a defined contribution, individual account employee pension plan (the "Plan"), under which an employee could make contributions to the Plan, and the Company would submit employer-sponsored matching contributions up to 6% of the employee's eligible compensation.[4] [Doc. No. 34] ¶¶ 36, 42. Northrup Grumman's employer-sponsored matching contributions vest, *inter alia*, "after a participant completes three years of service." *Id.* ¶ 42. If an employee leaves Northrup Grumman before having completed three years of service, all employer contributions remain unvested and are considered "forfeited assets" that are held in the Plan's master trust until reallocated to another use. *Id.* ¶¶ 42-43.

Plaintiffs' claims are based on Section 7.04 of the Plan, which states in relevant part:

> To the extent not used in the Plan Year to restore Participants' Accounts pursuant to Section 7.05 or to pay expenses in accordance with Section 16.10, the Plan Administrator shall apply Forfeitures to reduce Company contributions due for the Plan Year in which they arise. Any Forfeitures in excess of the amounts applied to reduce Company contributions and to restore Participants' Accounts in such Plan

---

[4] As of December 31, 2023, the Plan had 104,719 active participants and $36,162,920,264 in total assets. *Id.* ¶ 39.

> Year shall be carried forward to restore Participants' Accounts, to reduce Company contributions and to pay Plan expenses in accordance with Section 16.10.

[Doc. No. 38-2] at 53.

Plaintiffs allege that between 2018 and 2023, over 20,000 Plan participants ended their employment with benefits that had not yet vested, and under the Plan those participants' employer-sponsored contributions are considered forfeited assets or "forfeitures." *Id.* ¶ 49. They further allege that Northrup Grumman "use[d] Plan forfeiture assets to reduce Northrup Grumman's required employer matching contribution obligations, rather than using those Plan assets to pay for administrative expenses charged to Plan participant accounts." Id. ¶ 72. More specifically, Northrup Grumman allegedly used the entirety of the $70.8 million in forfeitures available for the years 2019-2023 to reduce its contributions, and allocated none of that amount to the other two uses contemplated in Section 7.04 of the Plan, described above. *Id.* ¶ 68. During that same period, the Plan incurred an alleged $57.4 Million in administrative expenses, all of which Northrup Grumman charged to Plan participants. *Id.*

Plaintiffs claim that the use of forfeitures to reduce employer contributions during the time period above was in violation of Section 7.04 of the Plan. *Id.* ¶ 102. Specifically, they contend that the phrase "to the extent not used" in that section imposed an affirmative obligation to use forfeitures first to restore participant accounts or pay expenses *before* using those forfeitures to reduce employer contributions. *Id.* ¶ 74. In other words, unless all accounts have been fully restored and expenses fully paid for a given year, forfeitures may not be used to reduce employer contributions. Based on this claim, Plaintiffs seek damages in the amount of the Plan administrative expenses that should have been paid out of forfeitures, rather than from their accounts, together with the corresponding investment returns that would have accrued from those expenses wrongfully taken from their accounts. *Id.* ¶ 84.

3

Relevant to the Motion, the Consolidated Class Action Complaint brings the following claims:

(1) Failure to Follow the Plan Terms, in violation of 29 U.S.C. § 1104(a)(1)(D), (Count I);
(2) Breach of the Fiduciary Duty of Loyalty and Prudence, in violation of 29 U.S.C. § 1104(a)(1)(A), (Counts II and III);
(4) Failure to Monitor, in violation of (29 U.S.C. §§ 1104(a)(1)(A)(ii), (Count IV);
(5) Breach of the Anti-Inurement Provision, in violation of 29 U.S.C. §§ 1103(c)(1), (Count V); and
(6) Prohibited Transactions, in violation of 29 U.S.C. § 1106(a)(1) and 29 U.S.C. § 1106(b)(1)-(3), (Counts VI and VII).[5]

*See* [Doc. No. 34] ¶¶ 99-165.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This does not require detailed allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "When a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand [a motion to dismiss]." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 517 (2014) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)). The Court must accept all well-pled facts in the complaint as true and construe all facts in the light most favorable to Plaintiffs. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

---

[5] The Amended Complaint also seeks in Count VIII statutory penalties for failure to provide Plan information in violation of 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B). In that regard, the Amended Complaint alleges that although Northrup Grumman produced the Plan Document on April 15, 2025, it failed to comply with multiple requests for the production of Plan Document for over five months by Plaintiff Steven Kawakami in breach of their duty to produce the Plan Document within 30 days of those requests. The Motion does not seek dismissal of Count VIII, which will remain pending.

### III. DISCUSSION

<u>A. Plaintiffs fail to state a claim for violation of the Plan terms (Count I) or breach of the fiduciary duty of loyalty and prudence (Counts II and III).</u>

"ERISA requires the Plan be administered as written and to do otherwise violates not only the terms of the Plan but causes the Plan to be in violation of ERISA." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) at 53. Central to Counts I, II, and III is whether Section 7.04 of the Plan required Defendants to first use forfeitures to restore Participants' Accounts or pay administrative expenses *before* the forfeitures may be used to reduce the Company's contributions. [Doc. No. 34] ¶ 102. That issue rests entirely on whether the "to the extent" language in Section 7.04 of the Plan[6] requires and mandates that forfeitures be used in a certain order. Based on the language and structure of the Plan document as a whole, the Court concludes that Section 7.04 does not mandate that forfeitures be used in any particular order, only that they be used for one of three listed purposes—pay administrative expenses, restore participant accounts, or apply to employer contributions.

The meaning of the phrase "to the extent that" has in its meaning both an element of the word "if" and also of quantity or measurement. In other words, the phrase means that if forfeitures are not used up for the first two listed purposes then any remaining forfeitures can be used for employer contribution. While Section 7.04 certainly implies that forfeitures may be used for the restoration of benefits and Plan expenses, it cannot be reasonably read to mean that forfeitures must be used for the first two purposes before they can be used for employer contributions.[7] For

---

[6] "*To the extent not used in the Plan Year to restore Participants' Accounts pursuant to Section 7.05 or to pay expenses in accordance with Section 16.10*, the Plan Administrator shall apply Forfeitures to reduce Company contributions due for the Plan Year in which they arise.")(emphasis added)

[7] This reading is underscored by the specific sections refenced in the "to extent" language of Section 7.04, *viz.* Sections 7.05 and 16.10. Section 7.05 (titled Reimbursement of Forfeitures) states explicitly when forfeitures are to be first used. ("If upon termination of employment a Participant incurred a forfeiture… the restored balance shall be funded, first, by Forfeitures and, second, by additional Company contributions.)  [Doc. No. 38-2] at 54. Section 16.10 (titled Expenses of the Plan)) states that "[a]ll reasonable and proper expenses of administration of the Trust Fund, including

these reasons, using Plan forfeitures as Defendants are alleged to have done in Count I did not violate the Plan, or specifically Section 7.04.

Nor did Defendants breach their fiduciary duties of loyalty or prudence, as alleged in Counts II and III, when they used Forfeitures for that purpose.

ERISA "imposes three broad duties on ERISA fiduciaries: (1) the duty of loyalty, which requires that 'all decisions regarding an ERISA plan ... be made with an eye single to the interests of the participants and beneficiaries'; (2) the 'prudent person fiduciary obligation,' which requires a plan fiduciary to act 'with the care, skill, prudence, and diligence of a prudent person acting under similar circumstances'; and (3) the exclusive benefit rule, which requires a fiduciary to 'act for the exclusive purpose of prov[id]ing benefits to plan participants.'" *Peters v. Aetna Inc.*, 2 F. 4th 199, 228 (4th Cir. 2021) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002)). Plaintiffs contend that Defendants breached their fiduciary duty of loyalty when they used forfeitures to pay employer contribution rather than Plan expenses charged to employee accounts, which "directly benefited [Northrup Grumman] by saving it millions…in contractually mandatory matching contributions, and directly worked to the detriment of the Plan and its participants" by requiring them to pay a greater share of the administrative expenses than they otherwise would have, [Doc. No. 34] ¶ 110.  And Defendants breached their duty of prudence when they "used an imprudent and flawed decision-making process to determine what was in the best interest of the Plan participants." *Id*. ¶ 117.

"ERISA does not create an exclusive duty to maximize pecuniary benefits," *Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279,

---

counsel fees, will be paid out of the Trust Fund unless paid by the Affiliated Companies."[7]  *Id.* at 84. "Trust Fund" is defined in relevant part as "[t]he sum of the contributions made to the Plan and held by the Trustee…." *Id.* at 25. Nothing in Section 16.10 suggests that forfeitures be first used to cover Plan expenses before employer contributions.

1282 (9th Cir. 1998) (per curiam). Rather, "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits," *See Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 923 (N.D. Cal. 2025) ("Hutchins II") (citing *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989)). Given that Section 7.04 does not require that forfeitures be used as Plaintiffs contend and there is no allegation that the Plaintiffs have not otherwise received any of their promised benefits, Plaintiffs have failed to allege facts which make plausible their claim that Defendant breached their fiduciary duty of loyalty. *See Naylor v. BAE Systems,* No. 1:24-cv-00536, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) (the Plan did not require that forfeited assets be used to pay the plan's administrative fees, and under those circumstances, there was no fiduciary breach when the defendants did not use forfeited assets to pay for the plan's fees.). For the same reasons, Plaintiffs have failed to allege facts that make plausible any claim that Defendants engaged in conduct that no reasonably prudent ERISA fiduciary would conclude was permissible and consistent with their fiduciary duties,[8] and therefore failed to state a claim for breach of the fiduciary duty of prudence. And as discussed below, Plaintiffs have likewise failed to plausibly allege that Defendants violated the "exclusive benefit rule," embodied in substance in ERISA's anti-inurement provision.

### C. Plaintiffs do not state a claim for breach of ERISA's anti-inurement provisions (Count V)

ERISA's anti-inurement provision, Section 403(c)(1), 29 U.S.C. 1103(c)(1), provides:

> The assets of the plan [except as otherwise provided in the statute] shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

---

[8] Plaintiffs conclusorily allege that Defendants "did not undertake any investigation into which option was in the best interest of the Plan's participants and beneficiaries" and that other prudent fiduciaries have done so under similar circumstances. [Doc. No. 34] ¶¶ 69-70. However, the dispositive inquiry is whether the promised benefits were provided and the terms of the Plan document were complied with.

Plaintiffs claim that Defendants breached ERISA's anti-inurement provisions when they used forfeited funds to satisfy their employer contributions rather than pay administrative expenses and as a result, the "assets of the plan…inure[d] to the benefit of the "Defendants]."

In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999), the U.S. Supreme Court considered whether the anti-inurement provision was violated when Hughes Aircraft, the employer fiduciary, used surplus funds created in a defined benefit plan from employer and employee contributions to fund benefits payable to non-contributing employees under an amendment to the Plan. The Court concluded that "[b]ecause only one plan exists and [Plaintiffs] do not allege that Hughes used any of the assets for a purpose other than to pay its obligations to Plan beneficiaries, Hughes could not have violated the anti-inurement provision under ERISA § 403(c)(1)." *Id*. at 442-43. In *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004)), the Supreme Court stated that "the [anti-inurement provision] demands only the plan assets be held for supplying benefits to plan participants." *Id at 22*.

Here, Section 7.04 specifies in no particular order three permissible uses of forfeited funds –restoring employee accounts, paying administrative expenses and making employer contributions. [Doc. No. 38-2] at 53. Making employer contributions required under a Plan is an obligation owed to plan beneficiaries necessary in order to supply the promised benefits to Plan participants; and when the employer here, Northrup Grumman, used Plan assets to pay its employer contribution obligations to Plan beneficiaries, with funds permitted to be used for that purpose, those funds were therefore used for and "never held for any other reason than [] provid[ing] benefits to participants in the plan and their beneficiaries…" 29 U.S.C. § 1103(c)(1). For these reasons, Plaintiffs have failed to state a claim for breach of ERISA's anti-inurement provision.

8

### D. Plaintiffs do not state a claim for engaging in prohibited transactions (Counts VI and VII)

Section 406(a) of ERISA prohibits, in relevant part, a fiduciary from causing the plan to engage in a transaction that it knew or should have known constituted (A) sale or exchange, or leasing, of any property between the plan and a party in interest; or (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan. 29 U.S.C. §§ 1106(a)(1)(A) and 1106(a)(1)(D). Section 406(b) of ERISA, 29 U.S.C. 1106(b), prohibits the fiduciary from:

> (1) deal[ing] with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act[ing] in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

In sum, these provisions prohibit a fiduciary from causing the plan to engage in certain "transactions" with a "party in interest," 29 U.S.C. § 1106(a)(1), or a Plan fiduciary, *id.* § 1106(b). The "transactions" contemplated by § 1106 "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length," and which "generally involve uses of plan assets that are potentially harmful to the plan." *Barragan*, 2024 WL 5165330, at *7 (*quoting Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)).

Plaintiffs claim, in two separate Counts, that Defendants engaged in prohibited transactions in violation of ERISA. In Count VI, they first allege that Defendants' use of plan funds to reduce employer contributions was a transaction that they knew or should have known was a sale or transfer of plan assets with a party in interest, in contravention of 29 U.S.C. §§ 1106(a)(1)(A) and 1106(a)(1)(D) [Doc. No. 34] ¶ 138. In Count VII, they allege that in allocating the forfeitures to reduce NG's contributions, Defendants dealt with plan assets in their own interest in violation of 28 U.S.C. § 1106(b)(1); transacted with a party adverse to the plan in violation of § 1106(b)(2);

9

and received illicit consideration from parties transacting with the plan in violation of § 1106(b)(3). (Count VII) [Doc. No. 34] ¶ 144. However, for reasons similar to those pertaining to the anti-inurement claim, Plaintiffs have not alleged that any of the forfeited assets were removed from the Plan or were used in a type of "transaction" necessary to impose liability under 29 U.S.C. § 1106. *See Barragan*, 2024 WL 5165330, at *7. They have therefore failed to allege facts that make plausible their anti-inurement claim.

### E. Plaintiffs do not state a claim for failure to monitor (Count IV)

Plaintiffs allege that Northrup Grumman violated its fiduciary monitoring duties by failing to ensure that the Committee's actions were compliant with the fiduciary, anti-inurement, and prohibited transactions requirements of ERISA as discussed *supra*. [Doc. No. 34] ¶ 125. A failure to adequately monitor claim is "wholly derivative" of fiduciary duty claims in ERISA actions, and therefore, cannot survive once the fiduciary duty claims are dismissed. *See Tullgren v. Hamilton*, No. 1:22-cv-00856-MSN-IDD, 2023 WL 2307615, at *8 (E.D. Va. Mar. 1, 2023); *Naylor*, 2024 WL 4112322 at *9; *Hanigan v. Bechtel Global Corp.*, No. 1:24-cv-00875), 2025 WL 77389, at *3 (E.D. Va. 2025). Because Plaintiffs have not stated a claim for any of the predicate causes of action, their monitoring claim likewise fails and must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED, that the Motion [Doc. No. 37] be, and the same hereby is, GRANTED, and

that Counts I-VII of the Amended Complaint be, and the same hereby are, DISMISSED.

The Clerk is directed to forward copies of this order to all counsel of record.

/s/
Anthony J. Trenga
Senior U.S. District Judge

Alexandria, Virginia
December 4, 2025